Jimmy D. SPEARS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–CA–000874–MR.

Court of Appeals of Kentucky.

March 31, 2002.

---

5. *See also Orton v. State*, Fla., 431 So.2d 236 (1983); *Stynchcombe v. Whitley*, 240 Ga. 776, 242 S.E.2d 720 (1978).

Irvin J. Halbleib, Louisville, KY, for appellant.

Albert B. Chandler, III, Attorney General, J. Gary Bale, Assistant Attorney General, Frankfort, KY, for appellee.

Before GUDGEL, Chief Judge; JOHNSON and TACKETT, Judges.

## OPINION

JOHNSON, Judge.

Jimmy D. Spears has appealed from a judgment entered by the Fleming Circuit Court on March 14, 2000, which convicted

him of burglary in the third degree,[1] possession of a controlled substance in the first degree,[2] and two counts of criminal attempt to commit burglary in the third degree,[3] and sentenced him to prison for a term of four years and fined him $1,000.00. Having concluded that the evidence of record was sufficient to support a reasonable juror finding Spears guilty beyond a reasonable doubt on all four convictions, we affirm.

During the night of August 23, 1999, Joe Miller, an Amish farmer in Fleming County, Kentucky, heard some noises coming from the direction of his barn. Miller looked out a window in his home and observed three people at his barn. These individuals were apparently taking various items from Miller's barn and loading them into the back of a pickup truck.

After the men left the scene in the pickup truck, Miller ran out to his barn and discovered that some harnesses, collars, bridles, saddles, tools, and horseshoe nails were missing.[4] Since Miller did not possess a telephone or a motor vehicle, he traveled by horse and buggy to the home of his neighbor, James Endicott, and telephoned the Fleming County Sheriff's department. After contacting the police, Miller and Endicott returned to Miller's home to await an investigating officer.

Deputy Sheriff John Catron came to Miller's farm, interviewed Miller and completed a report. Shortly after Deputy Catron's departure, Miller and Endicott observed a pickup truck drive slowly by Miller's farm. The truck's occupants were yelling loudly and honking the truck's horn. The truck repeated this scenario twice more. As the truck drove past Miller's property for the third time,

Endicott was able to follow the suspicious truck in his own truck.

After following the suspicious truck for some distance, the truck pulled to the side of the road, allowing Endicott to pass. The truck then proceeded to follow Endicott as he traveled toward Hillsboro. Endicott became concerned for his safety and drove toward the home of Deputy Sheriff Glen Robinson. However, before Endicott arrived at Deputy Robinson's home, the suspicious truck stopped following him and went in a different direction.

Deputy Robinson and Endicott left in Deputy Robinson's police cruiser to search for the suspicious truck. Endicott noticed the suspicious truck parked in front of the Hillsboro Handi–Mart, a small convenience grocery store and gasoline station. The bed of the pickup truck had small side boards on it and the tailgate was up, but Deputy Robinson and Endicott still saw what appeared to be several items covered by a tarpaulin or some similar type of cover. As Deputy Robinson pulled his police cruiser into the parking lot of the Handi–Mart to investigate, he heard someone shout, "The law's here!" Spears then ran in front of the pickup truck and around the west end of the Handi–Mart. Deputy Robinson gave chase and apprehended Spears at the rear of the Handi–Mart. While Deputy Robinson was capturing Spears, the other two suspects fled from the scene in the pickup truck. Neither the pickup truck nor the other two suspects were ever located.

After subduing Spears, Deputy Robinson conducted a pat-down search. The search revealed a rusty, broken padlock and a set of brass knuckles. A subsequent

---

1. Kentucky Revised Statutes (KRS) 511.040.

2. KRS 218A.1415.

3. KRS 506.010 and KRS 511.040.

4. Miller valued the stolen property at approximately $1,700.00.

investigation of the area behind the Handi–Mart revealed that the padlock had come from a truck trailer that the Handi–Mart had been using as a storage facility. On the ground near the trailer, Deputy Robinson also found a second padlock, that had been pried from a nearby storage shed, and a pair of pliers. The pliers were later identified by Miller as his clinching pliers. These pliers are used to shoe a horse and Miller testified that they had been stored in his barn.

After searching Spears, Deputy Robinson tied Spears's hands behind his back with Spear's shirt.[5] Deputy Robinson placed Spears in the back seat of his cruiser and awaited the arrival of other officers. After Deputy Eddie Vice and Deputy Catron arrived on the scene, Deputy Robinson and Deputy Vice left in Deputy Vice's cruiser in search of the pickup truck. Deputy Catron placed handcuffs on Spears and transferred him from Deputy Robinson's cruiser to his own. When Deputy Catron moved Spears from the back seat of Deputy Robinson's cruiser, Deputy Catron noted that Spears was seated in an awkward position, with his legs and boots on the back seat instead of the floor board. Pursuant to the policy of the Fleming County Sheriff's Department, Deputy Catron conducted a thorough search of the back seat of Deputy Robinson's cruiser after removing Spears. The search revealed in plain view an infant's sock containing crack cocaine. The sock had been tucked midway between two of the seat cushions. Deputy Robinson testified that he had last transported a prisoner in his cruiser two days earlier and that he had

conducted a search of the back seat area after transporting the prisoner. Deputy Robinson further testified that he did not believe anyone had gained access to the cruiser's back seat in the intervening time.

Spears was convicted by a jury of burglary in the third degree, possession of a controlled substance in the first degree, and two counts of criminal attempt to commit burglary in the third degree. Spears's motions for a directed verdict of acquittal were denied. The jury recommended that Spears receive four-year sentences for the convictions for burglary and possession of cocaine, with the sentences to run concurrently, and two $500.00 fines for the two convictions for criminal attempt to commit burglary. When the trial court sentenced Spears on March 14, 2000, it followed the jury's recommendations. This appeal followed.[6]

Spears claims that the evidence presented at his trial was so lacking that no reasonable juror could find him guilty. Further, as to the two convictions for criminal attempt to commit burglary in the third degree, Spears contends that the two storage facilities behind the Handi-art did not qualify as "buildings" within the coverage of Kentucky's burglary statutes.[7]

■■■ When a trial court considers a motion for a directed verdict of acquittal, it must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth.[8] "If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict

---

5. Apparently, the deputy did not have his handcuffs with him.

6. The disposition of this case has been delayed by problems with the certification of the record and a change of counsel for the appellant.

7. The word "building", as it is used in KRS 511.040, is defined by KRS 511.010(1).

8. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991).

should not be given."[9] In reviewing the trial court's decision, an appellate court should not disturb the trial court's denial of a motion for a directed verdict of acquittal, unless it would be clearly unreasonable for a jury to find guilt.[10] With this standard in mind, we review the evidence presented in support of each conviction separately.

■ Spears was convicted of burglary in the third degree for his unlawful entry into Miller's barn with the intent to commit a theft of property. The evidence showed that on the night of August 23, 1999, Miller heard some noises coming from his barn and observed three people in the vicinity of his barn. One of the strangers was holding a flashlight, while the two accomplices loaded items into the bed of a pickup truck. Miller overheard one of the participants say, "I got it." After the pickup truck had left, Miller went to his barn and discovered that a significant amount of his property had been stolen. A short time later, Miller and Endicott noticed a pickup truck drive slowly by Miller's residence, with its occupants yelling and honking the truck's horn. The same truck, with three occupants, was later seen at the Hillsboro Handi–Mart by Endicott. Consistent with Miller's earlier observations, the pickup truck appeared to have several items in its bed, with the items being concealed by side boards and a cover. When a police cruiser approached the pickup truck and its occupants, Spears attempted to elude the police by running behind the Handi–Mart. When Spears was apprehended, he was found to be in possession of a rusty, broken padlock, which was later matched to one of two storage facilities behind the Handi–Mart. On the ground near the storage facility, police also found a pair of pliers, which were later identified by Miller as an item that had been taken from his barn. We hold that this circumstantial evidence was sufficient to support a reasonable juror finding Spears guilty beyond a reasonable doubt of burglary in the third degree.

■ Spears was also convicted of possession of a controlled substance in the first degree. The Commonwealth claimed that during Spears's detainment he managed to remove the crack cocaine from his person and to stuff it into the back seat of Deputy Robinson's cruiser. The evidence showed that Deputy Robinson conducted only a limited search of Spears before placing him in the back seat of his cruiser. Spears, whose hands were restrained by only a shirt instead of handcuffs, was left unattended in the back seat of the cruiser for at least 10 minutes. When Deputy Catron removed Spears from the rear of Deputy Robinson's cruiser, Spears was seated in an awkward position, with his legs and boots on the back seat. The sock containing the crack cocaine was found in plain view, tucked only halfway between the seat cushions. Deputy Robinson testified that he had searched the cruiser thoroughly after transporting his last detainee and that no one else had access to his cruiser. We hold that this circumstantial evidence was sufficient to support a reasonable juror finding Spears guilty beyond a reasonable doubt of possession of cocaine.

■■ The last issues we address concern Spears's two convictions for criminal attempt to commit burglary in the third degree. In addition to challenging the sufficiency of the evidence, Spears also argues that the two storage facilities he was convicted of unlawfully entering were

9. *Id.*

10. *Id.; Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983).

not "buildings" as defined by KRS 511.010(1).

The evidence showed that a padlock from one of the two storage facilities was found on Spears when he was apprehended behind the Handi–Mart. The padlock from the other storage facility was found nearby lying on the ground. There was evidence that the padlock had been pried off the door. We hold that this circumstantial evidence was sufficient to support a reasonable juror finding Spears guilty beyond a reasonable doubt of the two counts of criminal attempt to commit burglary in the third degree.

Finally, we must determine whether the two storage facilities were the type of structures included within the term "building" as defined at KRS 511.010(1). For purposes of the offense of burglary in the third degree, a " '[b]uilding,' in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft: (a) Where any person lives; or (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation." Spears argues that people did not "assemble" at the truck trailer and the shed behind the Handi–Mart, and that these structures are not encompassed by the statutory definition of building.

Our review of Kentucky case law has not produced any case that is helpful in resolving this question. However, we believe from applying the common usage of the words in the statute that the trailer and shed are "structures" where "people assemble" and thus "buildings" a person can unlawfully enter into within the meaning of the statute. A "structure" includes "something made up of a number of parts held or put together in a specific way." "Assemble" means "to come together." [11]

Since the trailer and the shed were being used by the Handi–Mart for storage of its merchandise or supplies, it is clear to this Court that employees, customers and suppliers of the Handi–Mart would come together in the trailer and shed "for purposes of business." We believe common sense dictates that a trailer or shed that is being used by a business as a storage facility in lieu of a storage building meets the definition of building under the statute.

For the foregoing reasons, the judgment of the Fleming Circuit Court is affirmed.

ALL CONCUR.

---

11. Webster's II New Riverside University Dictionary (1988).