Larry Eugene WATKINS,
Defendant-Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

No. 77–5060.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1977.

Decided Oct. 20, 1977.

202

Alton D. Priddy, Hardy, Logan & Hastings, Louisville, Ky. (court appointed), for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before WEICK, Circuit Judge, PECK, Circuit Judge, and FREEMAN, Senior District Judge.*

RALPH M. FREEMAN, Senior District Judge.

This matter is before the Court on the appeal of Larry Eugene Watkins, who challenges his convictions on two counts of being a felon who received and/or possessed a firearm in violation of 18 U.S.C.App. § 1202(a)(1) and two counts of possessing heroin in violation of 21 U.S.C. § 844(a). Defendant also appeals from the judgment entered pursuant to a sentencing hearing under 18 U.S.C. § 3575 wherein he was

---

* Honorable Ralph M. Freeman, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

found to be a dangerous special offender and sentenced to an additional nineteen years, to be served consecutive to the total of six years he was given on the underlying substantive convictions.

Defendant has a long history of criminal activity. In March, 1966, he was convicted in the Jefferson Circuit Court, Louisville, Kentucky, of operating a motor vehicle without the owner's consent, theft of an automobile license plate, and storehouse breaking. On November 22, 1968, defendant's probation on those offenses was revoked and he was required to begin serving a five-year sentence.

On January 14, 1970, defendant was convicted in Jefferson Circuit Court of an armed robbery he committed in April, 1968, and of carrying a concealed weapon. He was sentenced to ten years imprisonment but was paroled on January 11, 1971.

On July 16, 1971, a parole violation warrant was issued by the Kentucky Parole Board on defendant's ten-year Kentucky armed robbery sentence for absconding from supervision and for returning to Jefferson County, Kentucky. Since defendant pleaded guilty to armed robbery on October 8, 1971, in the Clark Circuit Court, Jeffersonville, Indiana, and received a nine-year sentence, the parole violation warrant was lodged as a detainer by the Kentucky Parole Board against the defendant while he was incarcerated in Indiana.

Defendant escaped from custody on September 21, 1974, and was returned to the prison on April 23, 1975. In a post-conviction proceeding on February 26, 1976, defendant's guilty plea to the Indiana armed robbery was set aside on the ground that he was not advised of his right to a jury trial at the time he pleaded guilty. Apparently because defendant had already served several years of his sentence, the Clark Circuit Court did not order him to plead anew. Due to an oversight, defendant was erroneously released from custody by the Clark Circuit Court when his Indiana conviction was set aside.

On the evening of May 3, 1976, defendant and his girlfriend, Jackie Trowell, were visiting at the home of John and Lucretia Kirk in Louisville, Kentucky. Pursuant to a valid warrant police forcibly entered the Kirk home and found defendant behind the front door holding a loaded .38 caliber Rossi Special revolver. During the course of their search, police found a large quantity of heroin and a small brown case belonging to the defendant which contained a small amount of heroin and some narcotics paraphernalia.

Evidence was also introduced at trial that on September 28, 1976, defendant was arrested in Louisville by Lexington police officers on an outstanding arrest warrant. At the time of the arrest, defendant was found to have two bindles of heroin in his bathrobe pockets. The police officers testified that they then accompanied defendant to the bedroom so that he could get a shirt, and that they noticed the butt of a firearm under the mattress of the bed. The defendant claimed that the officers took him to the bedroom for the sole purpose of conducting a search, and that they only discovered the gun after lifting the mattress off the bed; the court, however, credited the testimony of the police officers.

At trial, defendant was found guilty by the jury on two counts of possessing a firearm while being a convicted felon and two counts of possessing heroin. He was sentenced to one year on each of the narcotics convictions and two years on each of the firearm convictions, all sentences to be served consecutively. At a subsequent hearing, defendant was found to be a dangerous special offender and sentenced to an additional nineteen years.

The Court finds no merit in defendant's assignments of error with regard to the two convictions for being a felon in receipt or possession of a firearm. Title 18 U.S.C. App. § 1202(a) provides:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . .

. . . . )  .

and who receives, possesses, or transports in commerce or affecting commerce, after the date of the enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

The defendant contends that the Government failed to prove the requisite venue for an offense of receipt and also failed to prove an interstate commerce nexus for an act of possession. The Government concedes that its case rests on the establishment of the offense of possession, and the defendant concedes that the proofs at trial established that he was in possession of the revolvers in the Western District of Kentucky, where the trial was prosecuted. Thus the only remaining question is whether the Government proved the requisite connection with interstate commerce.

In *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 524, 30 L.Ed.2d 488 (1971), the Supreme Court held that "a person 'possesses . . . in commerce or affecting commerce' if at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce." At the trial it was established that the Rossi .38 caliber revolver was manufactured in Brazil and that the Iverson-Johnson .38 caliber revolver was manufactured in Massachusetts. This Court has specifically held, in *United States v. Jones*, 533 F.2d 1387, 1392–93 (6th Cir. 1976) that proof that a firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected commerce. The *Jones* decision stated:

Because a person possessing a firearm must necessarily have received it, the course of conduct which Congress intended to punish is the same regardless of whether the facts charged or proven show a receipt or a possession. There is no logic in the position that a nexus sufficient to support a conviction for receipt of a firearm will not also support a conviction for possession after receipt.

In this case the Government proved the facts alleged in count 1 surrounding the purchase of the weapon by Jones. The Government could have charged receipt, but instead, it charged possession; the proofs would have supported a conviction under either charge. Because the commerce nexus is jurisdictional, and because the Government clearly had the power to punish this conduct as "receiving a firearm," it follows that the power to punish this same conduct is not diminished by labeling the conduct "possessing" rather than "receiving."

We hold that when a person is charged with possession of a firearm but not with receipt of it, proof that the firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected commerce.

The Court therefore affirms defendant's convictions for being a felon in receipt or possession of a firearm in violation of 18 U.S.C.App. § 1202(a).

Defendant also contends that the trial court was incorrect in denying his motion to suppress the Iver-Johnson .38 caliber revolver. As indicated above, defendant gave a version different from that of the police of the facts surrounding the discovery of the gun under the mattress in his bedroom. This Court, of course, does not weigh the evidence, and the finding of the trial court must be sustained if there is substantial evidence to support it. See *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Since the trier of fact credited the Government version of the arrest, this Court is bound to consider the evidence in the light most favorable to the Government. *United States v. Woods*, 544 F.2d 242 (6th Cir. 1976).

This Court has squarely held that even after a defendant has been restrained pursuant to arrest, the search of an area from which he might gain possession of a weapon is lawful. *United States v. Kaye*, 492 F.2d 744, 746 (6th Cir. 1974). The Court stated:

A search incident to arrest may extend to "the arrestee's person and the area 'within his immediate control'—construing

that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Appellant's suitcase was within that area at the time of his arrest. It is true, as Appellant contends, that Appellant had been subdued and presented no danger to the police at the time the suitcase was opened. Nor was there the possibility that the evidence in the suitcase would be destroyed as the suitcase was under the control of the police. However, the authority to conduct a search incident to an arrest, once established, still exists even after the need to disarm and prevent the destruction of evidence have been dispelled.

■ Since the gun in question was within defendant's reach in the bedroom where he was taken to get a shirt, the seizure of the weapon under the circumstances of this arrest was lawful.

Defendant also appeals from his conviction for possession of heroin, contending that the evidence was insufficient to support the verdict that he was in possession of the heroin found on a spoon in his tote bag on May 3, 1976. The evidence showed that the bag belonged to the defendant, who was not a heroin addict. It was also established that defendant's friend, Ms. Trowell, was a heroin addict who had purchased heroin that evening from Kirk. The search of the Kirk household resulted in the confiscation of a large quantity of narcotics, and both Kirk and Ms. Trowell had access to the bag. Defendant therefore urges that the jury's verdict was merely a speculative inference based on circumstantial evidence, and that since both Kirk and Ms. Trowell had access to the bag the Government had not established any knowing possession of its contents by defendant.

■ The rule in this Circuit, however, is that circumstantial evidence need not exclude every reasonable hypothesis except that of guilt before the trier of fact may consider the question of guilt or innocence. *United States v. Carter,* 486 F.2d 1027 (6th

Cir. 1973). In this case, defendant was the owner of the bag which had just that day been brought to the Kirk premises. Although evidence was introduced to show that defendant was not a heroin addict, the jury also was aware that he had been arrested with heroin in his possession on another occasion. From these facts it was certainly possible for the jury to conclude that defendant was in knowing possession of the heroin in the bag. Defendant's conviction for possession of the heroin found in his carrying bag on May 3, 1976, is therefore affirmed.

Defendant also urges that this Court vacate his sentence as a dangerous special offender. Title 18 U.S.C. § 3575(e) states that a defendant is a special offender if:

(1) the defendant has previously been convicted . . . for two or more offenses committed on occasions different from one another and from such felony and punishable . . . by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year . . .

A conviction shown on direct or collateral review or at the hearing to be invalid or for which the defendant has been pardoned on the ground of innocence shall be disregarded for purposes of paragraph (1) of this subsection.

■ A straightforward reading of the statute suggests that less than five years must have elapsed between the commission of the felony on which the defendant is currently being sentenced and either the release of defendant from imprisonment for a separate prior conviction or his commission of a prior offense. The immediate offenses for which defendant was sentenced were committed on May 3 and September

28, 1976. The Indiana armed robbery to which he pleaded guilty was committed July 9, 1971, within the five years prior to his May 3, 1976 offenses, but the conviction for that offense was reversed in subsequent proceedings. The statute clearly provides that "[a] conviction shown on direct or collateral review . . . to be invalid . . . shall be disregarded for purposes of paragraph (1) of this subsection." Therefore defendant's commission of the armed robbery in Indiana and his subsequent imprisonment for that offense cannot be considered in determining whether he is a dangerous special offender.

■ The Government contends that the detainer lodged by the Kentucky Board of Parole constituted constructive custody because of the adverse consequences defendant suffered by reason of the detainer. The District Court accepted the Government's position and made the following findings:

> . . . The Court finds that on July 16, 1971, within the requisite statutory five-year period, a parole violation warrant was issued by the Kentucky Parole Board on defendant's ten (10) year Kentucky armed robbery sentence for defendant's absconding from supervision and for returning to Jefferson County, Kentucky. A detainer was placed by the Kentucky Parole Board against the defendant while he was incarcerated in Indiana, and the Kentucky Parole Board stated it intended to enforce the detainer. Due to an oversight, defendant was erroneously released from custody by the Clark Circuit Court when his Indiana conviction was set aside. The Court finds that this error on the part of the jailer should not defeat the applicability of the Dangerous Special Offender Statute. See *United States v. Vann,* 207 F.Supp. 108 (E.D.N.Y.1962). Additionally, defendant suffered adverse consequences during his incarceration in Indiana due to the detainer and he was thus in the constructive custody of the Kentucky Parole Board because of the detainer during this period. See *Smith v.*

*Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

In support of the District Court's findings, documents and letters were submitted showing that the Kentucky Parole Board intended to return defendant to prison for additional service of his Kentucky armed robbery sentence. The Government also submitted correspondence from the defendant which stated that the detainer prevented him from participating in the prison work-release program.

This Court believes, however, that the reliance of the Government and the District Court on the effect of the Kentucky detainer is misplaced. In *Moody v. Daggett,* 429 U.S. 78, 86–87, 88, 97 S.Ct. 274, 278, 279 n. 9, 50 L.Ed.2d 236 (1976), the Supreme Court expressly rejected both the contention that the adverse consequences of a detainer activate a due process right and that an outstanding parole violator warrant creates a constructive custody. The Court stated:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect.

The Court went on to explain:

> Petitioner also argues that the pending warrant and detainer adversely affect his prison classification and qualification for

institutional programs. We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

Were this Court to accept the Government's argument that the lodging of a detainer constitutes constructive custody for purposes of the dangerous special offender statute, then certainly a defendant would be entitled to an immediate parole violation hearing as soon as the detainer is issued. That position was squarely rejected in *Moody v. Daggett.*

■ The Government also suggests that the circumstances of the parole violation, culminating in the lodging of the detainer against defendant, made him a fugitive from justice, and that the fugitive status translates into custody sufficient to satisfy the dangerous special offender statute. Kentucky Revised Statute § 439.430 provides for the arrest of a parolee who is believed to have violated the terms of his parole and states:

(3) A prisoner for whose return a warrant has been issued by the board, shall be deemed a fugitive from justice or to have fled from justice. If it shall appear he has violated the provisions of his release, then the time from the issuing of such warrant to the date of his arrest shall not be counted as any part of the time to be served in determining his final discharge eligibility date from parole if the board in its discretion so orders.

The Government urges that the statutory classification of the defendant as a fugitive from justice satisfies the separate prior felony requirement of the dangerous special offender statute. It is clear to the Court, however, that the intent of the Kentucky statute is merely to exclude the time between which a warrant is issued and a parolee is returned to prison from credit toward the time remaining to be served on his sentence. To accept the Government's interpretation, which is essentially to equate a parole violation with a felony conviction prior to any hearing or judgment on the matter, is to ignore all constitutional safeguards established for parolees. See *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ The Government also suggests that the defendant's fugitive status from September 21, 1974 to April 23, 1975, the time of his escape from the Indiana State Prison, satisfies the dangerous special offender statute. Since the defendant was never charged or convicted for prison escape, however, and since the conviction for which he was imprisoned was subsequently vacated, this Court cannot extrapolate from defendant's uncharged prison escape a felony conviction required by the terms of the statute. As with the parole violation detainer, defendant would be entitled to a full range of constitutional safeguards before his allegedly criminal activity could be charged against him in such a fashion. While the Court recognizes that defendant is the type of recidivist to whom the dangerous special offender statute was meant to apply, the circumstances of this case, because of the vacated conviction, do not meet the statutory requirements. Defendant's sentence as a dangerous special offender is therefore vacated.

■ The Court having vacated the judgment sentencing defendant as a dangerous special offender, the issue of whether a nineteen-year sentence is disproportionate

208

under the circumstances of this case is moot and need not be decided on this appeal.

Affirmed in part; vacated in part.