**Walter COLLINS, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

Nov. 21, 1978.

Jack Emory Farley, Public Defender, Linda K. West, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Sam E. Isaacs, II, Asst. Atty. Gen., Larry S. Roberts, Sp. Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

Walter Collins was convicted of theft by unlawful taking, trafficking in heroin, and being a persistent felony offender, and was sentenced to 13 years' imprisonment. The Court of Appeals affirmed the judgment of the Fayette Circuit Court. We granted discretionary review.

On June 22, 1975, three Lexington police detectives had occasion to visit the Sportsman's Motel in connection with an investigation concerning stolen tires. Appellant, who was staying at the motel with his nephew Anthony Collins, consented to a search of his room for the missing tires. Having been alerted by a maid who had seen something thrown out of the window of appellant's room, the detectives found an automatic pistol and a hide-a-key case containing 20 bags of what appeared to be heroin on the ground near the window.

This discovery led to the arrest of appellant and his nephew in the motel room. Appellant was patted down by Detective Shade, who next searched the pillows on the motel bed and then ordered appellant to sit on the bed. Immediately thereafter Shade proceeded to search the air conditioner located four to seven feet from where appellant was seated. A bus station locker key was found when Shade opened a small (eight inches by eight inches) door on the air conditioner. Subsequently the police, pursuant to a warrant, conducted a search of the locker corresponding to the key and found four grams of heroin (58% pure) and various drug paraphernalia. The contents of the locker were introduced at trial over appellant's objection that they be suppressed as fruit of an illegal search and seizure.

Discretionary review was granted on the limited issue of whether the warrantless search of the air conditioner was a valid search incident to the lawful arrest of appellant. The constitutionality of a search incident to an arrest turns upon whether the area searched is " 'within [the arrestee's] immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969). Both the trial court and the Court of Appeals concluded that the search here was within the guidelines set out by the United States Supreme Court in *Chimel.* We affirm.

Appellant contends that the search of the air conditioner exceeded *Chimel* standards. The gist of his argument is that under the circumstances the arrestees were under police control to such an extent that the possibility of appellant gaining access to the air conditioner to reach a weapon or evidence was minimal. We cannot agree that *Chimel* requires a police officer to weigh an arrestee's probability of success of obtaining a weapon or destructible evidence before conducting a search incident to an arrest. As the Supreme Court of the United States said in *U. S. v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 440 (1973):

A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found . . . .

The Court of Appeals for the Sixth Circuit recently held, in a case factually similar to the case before us, that "even after a defendant has been restrained pursuant to arrest, the search of an area from which he might gain possession of a weapon is lawful." *Watkins v. U. S.,* 564 F.2d 201, 204 (6th Cir. 1977), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978). In *Watkins,* the defendant was arrested in his bathrobe by two police officers, who accompanied him to his bedroom so that he could get a shirt. While in the bedroom the police discovered a revolver under the mattress. The Court concluded that since the gun was within the defendant's reach the search was valid as incident to the arrest.

■ We agree with the position taken in *Watkins* that the area which may be searched under *Chimel* is that area from which the arrestee *might* gain possession of a weapon or destructible evidence. In this case there were three detectives and two arrestees in the motel room. Appellant was located four to seven feet from the air conditioner. The air conditioner was therefore within the immediate area where appellant *might* have reached, and we cannot

say the search was unreasonable nor unconstitutional.

The judgment is affirmed.

All concur except LUKOWSKY, J., who dissents.

LUKOWSKY, Justice, dissenting.

My respect for the Fourth Amendment of the Constitution of the United States[1] and Section Ten of the Constitution of the Commonwealth of Kentucky requires me to voice my dissent in this case.

On June 21, 1975, two men, one of them Walter Collins, were observed stealing two tires from a service station. The next day the owner of the Sportsman Motel told police that he had observed two tires in the bathtub of a room rented to Walter and his nephew, Anthony Collins. An employee of the motel observed the tires being removed from the motel before the police could obtain a warrant to search the motel room. No search warrant was ever obtained for the room. The police visited the motel room, obtained permission to search it for the tires, searched and found no tires, but observed black marks in the bathtub which they photographed. They also searched Walter's car but found nothing of relevance. No arrests were made at this time.

Before the police left the motel, a maid reported to them that she saw something being thrown from the bathroom window of Walter's motel room. The police then searched the area outside the window and found a .25 caliber automatic pistol and a magnetic key case containing a substance which they believed to be heroin.

Three officers then returned to Walter's room and arrested both occupants. The police then:

1. Currently state courts bear an increased burden in deciding Fourth Amendment issues because *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), revoked the habeas corpus jurisdiction of federal courts in this area. State judges may no longer take comfort in the thought that any inadvertent misinterpretation of the Fourth Amendment is subject to collateral review in the federal courts and must realize that chances of direct review by the Supreme Court of the United States are slim indeed. *Duncantell v. Texas,* —— U.S. ——, 99 S.Ct. 637, 58 L.Ed.2d —— (1978) (Brennan, J., dissenting); *see Brown Transport Corp. v. Atcon, Inc.,* —— U.S. ——, 99 S.Ct. 626, 58 L.Ed.2d —— (1978) (White, J., dissenting). In view of these realities state judges should be particularly sensitive to Fourth Amendment claims presented to them—a fact my colleagues have yet to appreciate.

1. searched both Walter and Anthony,

2. searched the bed,

3. seated Walter and Anthony on the bed,

4. searched the air conditioner which was located at least four and not more than eight feet from the bed by opening the door to the control panel, and

5. found a key to a locker at the bus station which was later searched pursuant to a warrant and disgorged evidence which is alleged to be the fruit of an illegal search of the air conditioner.

The record also discloses:

1. The officers did not bother to handcuff Walter and Anthony at the time of their arrest or thereafter,

2. one officer offered Walter some orange juice while he was seated on the bed,

3. one officer kept Walter and Anthony under constant watch while they were seated on the bed,

4. the officers conducted a general search of the entire motel room, and

5. Walter and Anthony never offered any resistance to the police.

Considering these facts and applying the rule of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), I am convinced that the search was unlawful and evidence obtained by use of the key should have been suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 4441 (1963); *Silverthorne v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

In *Chimel,* supra, the Supreme Court of the United States articulated the rule as follows:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs —or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches . . . may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

The control panel in which the key was concealed was closed at the time of the search. Consequently, the only justification for the search without a warrant is that the control panel was within Walter's "immediate control." For an officer to search the panel he would have had to stand between Walter and the panel. At the time of the arrest there were three officers in the room, certainly more than sufficient manpower to prevent Walter from reaching the panel. Unless Walter was an acrobat, a Houdini or Stretcho-Man I can not conceive how the panel could have fallen within the area of his immediate control. To say that the panel, four to eight feet away, was an area into which he was able to reach, despite the fact that an armed officer stood between him and it, would defy credulity.

The evidence does not support any credible reasons which would have led the officers to believe that Walter was an especially dangerous person against whom extraordinary protective measures may have been required, or that the search was actually an attempt to secure an area which the offi-

cers believed in good faith was within Walter's area of immediate control. Such contentions would be torpedoed by the facts:

1.  the officers chose not to handcuff or otherwise restrain Walter and Anthony.

2.  the officers chose the place they were to sit,

3.  an officer stood between Walter and the control panel door and turned his back to Walter in order to open the door,

4.  an officer offered Walter a drink of orange juice, and

5.  the officers proceeded to conduct a general search of the entire motel room.

The rationale is well expressed in *United States v. Griffin,* C.A. 7th, 537 F.2d 900, 904 (1976):

"Once a suspect is under the control of arresting officers, the area of permissible search under *Chimel* is narrowed accordingly. [T]he reason underlying the limited right of search allowed in *Chimel* is the danger that the defendant will seize a weapon or destructible evidence, and whether that danger exists depends upon the circumstances of each case. Regardless of . . . earlier apprehensions . . . the officers obviously did not believe defendant was likely to resist, escape, or destroy evidence after he had been placed under arrest. They did not handcuff him, and they allowed him to walk about the room . . . . If the freedom thus permitted defendant created [a] danger . . . the danger was of the officers' own making. Just as "*Chimel* does not permit the arresting officers to lead the accused from place to place and use his presence in each location to justify a 'search incident to the arrest,'" see *United States v. Mason,* 173 U.S.App.D.C. 173, 177, 523 F.2d 1122, 1126 (1975), it does not permit the officers to achieve the same result by ordering the accused to . . . move about the room . . . . The officers' only legitimate purpose in being in the room was to make an arrest. They did not have the right to create a situation which gave them a pretext for searching beyond the area of defendant's immediate control. They could . . . have posted a guard on the room, obtained a search warrant, and later returned to search the room pursuant to the warrant. Cf. *United States v. Jeffers,* 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); *United States v. Hayes,* 518 F.2d 675, 677–678 (6th Cir. 1975). They could not, however, make a warrantless search of the bedroom and the bathroom without violating the strictures of *Chimel.*"

To put it simply, the control panel was not within the area from which Walter might gain possession of a weapon or destructible evidence. *United States v. Shye,* C.A. 6th, 473 F.2d 1061, 1066 (1973); *United States v. Mapp,* C.A. 2d, 476 F.2d 67, 79–81 (1973).

I would reverse the judgment and remand the case to trial court with directions to suppress the contents of the locker and conduct a new trial.